**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| Red Bone Alley Foods, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:13-cv-3590-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| National Food and Beverage, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court upon Defendant National Food and Beverage, Inc.'s ("Defendant") Motion to Dismiss or, in the Alternative, to Stay or Transfer ("Motion"). For the reasons that follow, the Court denies Defendant's Motion.

**BACKGROUND[1]**

Plaintiff Red Bone Alley Foods, LLC ("Plaintiff") operates a South Carolina business that manufactures and sells sauces and marinades to grocery stores and other retail establishments for resale to the public. Defendant is a Texas corporation that specializes in processing and packaging sauces and condiments for customers like Plaintiff.

Plaintiff and Defendant entered into an ongoing business relationship in 2011 whereby Defendant produced and delivered certain goods to Plaintiff, and Plaintiff provided to Defendant the instructions for its product's formulations (including ingredients), packaging, and processing. At the beginning of the business relationship, Defendant produced two lines of spray marinades

---

[1] The statement of facts is drawn from Plaintiff's Complaint and is stated in the light most favorable to Plaintiff. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (explaining that when deciding a motion to dismiss for lack of personal jurisdiction, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff.").

1

for Plaintiff.  Defendant then solicited Plaintiff to move all of its product lines to Defendant for production, and Plaintiff began to do so in 2012.

After moving a significant portion of its product lines to Defendant for production, Plaintiff began to receive product with numerous quality assurance problems that resulted in Plaintiff being unable to supply its customers with product.  Also, Plaintiff received product with incorrect labeling that made shipment of the product impossible.  In late 2012, Plaintiff was going to change the bottle size of its aioli sauces from ten ounces to twelve ounces.  Defendant was responsible for purchasing the new bottles, caps, labels, and shrink bands associated with the change in bottle size.  Plaintiff undertook the necessary paperwork with its customers to prepare them to receive the new twelve-ounce sized items.  However, Defendant failed to acquire the new bottles, caps, labels, and shrink bands in time for production.  Defendant's failure to acquire the appropriate materials resulted in a multiple-month delay during which Plaintiff was unable to supply approximately 2,500 stores with its products.

In exchange for production by Defendant, Plaintiff was to pay for the goods within a term of sixty to ninety days.  This arrangement allowed for Plaintiff to receive the manufactured product in South Carolina, deliver the product to its customers across the country, and receive payment from the customers upon the sale of the product.  However, disruptions in Plaintiff's cash flow resulted in an accumulation of accounts receivable to Defendant.  In late 2012, Defendant notified Plaintiff that due to the outstanding accounts receivable, Defendant would not package any more products for Plaintiff until the matter had been addressed.  On December 7, 2012, Plaintiff executed a promissory note in order to memorialize the debt, structure payments on the outstanding balance, and have Defendant continue to produce product so that cash flow could continue to Plaintiff.  Dale Barth, a member of Plaintiff's LLC, executed a guaranty

2

agreement, guaranteeing Plaintiff's performance under the promissory note. The promissory note and guaranty agreement allowed the parties to continue to do business together.

On April 25, 2013, Defendant contacted Plaintiff by email regarding a request by the federal Food and Drug Administration ("FDA") to recall Plaintiff's wasabi aioli. In this email, Defendant told Plaintiff that the FDA was recalling the wasabi aioli because "the item has no content of Wasabi" and therefore the label was misbranded. Apr. 25, 2013 Email, ECF 8-2. Prior to this time, Plaintiff had investigated whether actual wasabi content was required to label the product as wasabi, and Plaintiff believed that it was not. When Plaintiff informed Defendant that Plaintiff intended to challenge the FDA recall based on the mislabeling of wasabi content, Defendant revealed that the real reason the FDA requested a recall was because Defendant had used a wrong ingredient in the wasabi aioli. Instead of using the all-natural horseradish ingredient specified by Plaintiff, Defendant had been using a horseradish ingredient with metabisulfite preservative. Because such preservatives can cause severe adverse health risks in persons allergic to sulfites, the FDA requires products containing preservatives to warn about the potential health hazards. Since Plaintiff's wasabi aioli was not supposed to have any sulfite preservatives in it, the label did not warn of the health hazards associated with sulfites.

On September 6, 2013, Defendant filed suit in Texas state court ("the Texas Suit") alleging breach of contract related to the promissory note and guaranty, and seeking a declaratory judgment and injunctive relief related to the issues surrounding the wasabi aioli recall. On November 20, 2013, Plaintiff commenced this suit in South Carolina state court ("the South Carolina Suit"), alleging two claims for breach of contract and two claims for negligence arising from the wasabi aioli recall and the failure to acquire new twelve-ounce packaging materials; one count of breach of contract accompanied by a fraudulent act arising from the April

3

25, 2013 email; and one claim for violation of the South Carolina Unfair Trade Practices Act. On November 26, 2013, Defendant served the Texas Suit on a former employee of Plaintiff who had previously served as the registered agent for Plaintiff in Texas, but whose authority had been revoked by Plaintiff in 2008. On December 12, 2013, the Texas Secretary of State was served with the South Carolina Suit. On December 17, 2013, five days after the South Carolina Suit had been served on the Texas Secretary of State, Plaintiff was served with the Texas Suit.

On December 26, 2013, Defendant removed the South Carolina Suit to this Court. Defendant filed the instant Motion on January 2, 2014. Plaintiff filed a response, and Defendant filed its reply. The Motion is now ripe for review.

## SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000. Plaintiff is a South Carolina limited liability company with members who are all residents of South Carolina. Defendant is a Texas corporation with its principal place of business in Texas. Finally, Plaintiff seeks damages in excess of $75,000. Therefore, this Court has diversity jurisdiction over this case.

## ANALYSIS

### I.    Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2)

Defendant first moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When the court addresses the issue of jurisdiction on the basis of motion papers and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a

4

prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "[T]he court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). In deciding the jurisdictional issue, the court may consider pleadings, affidavits, and other evidentiary materials. *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992).

"[T]o validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. *Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the scope of the court's inquiry is whether defendants have "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

A defendant has minimum contacts with a jurisdiction if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Accordingly, the defendant's actions must have been "directed at the forum state in more than a random, fortuitous, or attenuated way." *Mitrano v. Hawes,* 377 F.3d 402, 407 (4th Cir. 2004) (internal citation omitted).  In determining the existence of minimum contacts, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in the Plaintiff's favor.  *See, e.g., Precept Med. Prods., Inc., v. Klus,* 282 F. Supp. 2d 381, 385 (W.D.N.C. 2003) (explaining that "for the purposes of a Rule 12(b)(2) motion, the Court will accept the Plaintiff's version of disputed facts").

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged.  *See generally ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623-24 (4th Cir. 1997).  When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over a defendant that purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).  However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Because "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction," *ESAB Grp., Inc.*, 126 F.3d at 623, the Court will first address whether the Plaintiff has made a prima facie showing of specific personal jurisdiction.  The Fourth Circuit has applied a three-part test when evaluating the propriety of exercising specific jurisdiction:  (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits

6

and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." *Nolan*, 259 F.3d at 215-16 (citing *Helicopteros*, 466 U.S. at 414-16; *Burger King*, 471 U.S. at 472, 476-77).

### A.  Whether Defendant Purposefully Established Minimum Contacts in the Forum

The Supreme Court has made clear that an out-of-state party's contract with a party based in the forum state cannot "automatically establish sufficient minimum contacts" in the forum state. *Burger King*, 471 U.S. at 478.  Instead, the court must perform an individualized and pragmatic inquiry into the surrounding facts of the disputed contractual relationship to determine "whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.  Although the test for minimum contacts can be somewhat imprecise, significant factors typically include: (a) whether the defendant maintains offices or agents in the forum state; (b) whether the defendant owns property in the forum state; (c) whether the defendant reached into the forum state to solicit or initiate business; (d) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (e) whether the parties contractually agreed that the law of the forum state would govern disputes; (f) whether the defendant made in-person contact with the resident of the forum state in the forum state regarding the business relationship; (g) the nature, quality, and extent of the parties' communications about the business being transacted; and (h) whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).  Underlying these factors is the central question of whether each defendant has performed purposeful acts in the forum state such that the defendant has

7

created a substantial relationship with the forum state. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000).

In an affidavit, Dale Barth, a member of Plaintiff, sets forth the following facts to establish that Defendant purposely availed itself of the privileges of conducting activities in South Carolina. First, pursuant to the agreement between the parties, Defendant did not complete its responsibilities in the relationship, and thus was not entitled to payment, until it physically delivered manufactured product to Plaintiff in South Carolina. Thus, performance of some of Defendant's contractual duties occurred within the forum. Second, throughout the parties' multi-year business relationship, employees and agents of Defendant made a number of in-person visits to South Carolina to further the business relationship. Specifically, Aaron Edelen, Defendant's president, and Johnny Lee Stanley, a sales manager, visited Plaintiff in South Carolina on April 5, 2011, and June 20, 2011. On September 6, 2013, Peter Cantrell, Defendant's owner, visited Plaintiff in South Carolina in order to discuss the FDA recall of the wasabi aioli. Thus, Defendant made in-person contact with Plaintiff in the forum state.

Finally, Defendant sent a number of emails to Plaintiff in South Carolina discussing the FDA recall. On April 25, 2013, Defendant contacted Plaintiff by email regarding the FDA recall of the wasabi aioli. In the email, Defendant told Plaintiff that the reason for the recall was because the item did not contain wasabi and thus had a misbranded label. According to the Barth Affidavit, had this been the real reason, Plaintiff would have been responsible for the recall. However, Defendant later revealed that the real reason was because Defendant had used a wrong ingredient in the wasabi aioli, thus making Defendant responsible for the recall. The April 25, 2013 email, initiated by Defendant, is the basis for Plaintiff's claim for breach of contract accompanied by a fraudulent act. In addition to the Barth Affidavit and in further support of

8

specific jurisdiction, Plaintiff submitted two email chains—one with eight emails dated April 26, 2013, and one with four emails sent on May 7, 2013—between Defendant and Plaintiff discussing the FDA recall.

Based on the foregoing evidence, and viewing the facts and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Defendant (1) deliberately engaged in long-term business activities in South Carolina; (2) performed part of its contractual duties in South Carolina; (3) made in-person contact with Plaintiff in South Carolina on at least three occasions; (4) communicated via email with Plaintiff in South Carolina multiple times regarding the FDA recall; and (5) sent an email to Plaintiff in South Carolina misstating the purpose of the recall and giving rise to at least one of Plaintiff's claims.  Under these facts, the Court concludes that Defendant "purposefully established minimum contacts within the forum."  *Burger King*, 471 U.S. at 479; *see CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 294-97 (4th Cir. 2009) (finding personal jurisdiction where foreign defendant (1) reached into the forum state to initiate business with plaintiff, (2) corresponded and collaborated with plaintiff over an extended period, and (3) made in-person contact with plaintiff twice); *see also Walden v. Fiore*, 571 U.S. __, __ (2014) (slip op., at 8) ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.").

**B.  Whether Plaintiff's Claims Arise Out of Forum-Related Activities**

Plaintiff has alleged multiple causes of action against Defendant arising out of their business relationship.  According to Plaintiff, Defendant had to physically deliver the product to Plaintiff in South Carolina in order to complete its contractual duties.  It is the delivery in South Carolina of product containing the wrong ingredients as well as the failure to timely deliver into

9

South Carolina the properly sized product that create the bases for Plaintiff's claims.  Moreover, Plaintiff's claim for breach of contract accompanied by a fraudulent act arose from the email sent by Defendant to Plaintiff in which Defendant misstated the purpose of the FDA recall. According to Plaintiff, Defendant made this false statement in an attempt to shift financial responsibility for the recall from Defendant to Plaintiff even though the recall resulted from Defendant's breach of contract.  In other words, Plaintiff alleges that Defendant directed an email into South Carolina, that the email was part of the ongoing business relationship between the parties, and that the false statement in the email is the basis of the cause of action for breach of contract accompanied by a fraudulent act.  The Fourth Circuit has held that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).  Upon review of the record, the Court concludes that Plaintiff has met its burden of showing that its claims arise out of Defendant's contacts with South Carolina.

### C.  Whether the Exercise of Jurisdiction is Constitutionally Reasonable

The final prong of the three-part test requires the Court to determine whether jurisdiction is constitutionally "reasonable."  In making this determination, the Court evaluates "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  *Nolan*, 259 F.3d at 217 (quoting *Burger*

10

*King*, 471 U.S. at 477). "More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* (internal quotation marks omitted).

The Court finds that there is nothing unreasonable about subjecting Defendant to jurisdiction in South Carolina. Defendants traveled to South Carolina for business purposes on multiple occasions, demonstrating that travel to this state is not an enormous burden. Moreover, "because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474 (internal quotations omitted). Although it may be inconvenient for Defendant to litigate this case in South Carolina, the inconvenience is not so grave as to offend constitutional due process principles. Moreover, Plaintiff has an interest in litigating the dispute in South Carolina, and South Carolina has an interest in adjudicating disputes involving harm to one of its residents when the damage is felt locally. In sum, given Defendant's contacts with the forum state, the Court finds that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotations omitted). Accordingly, the Court concludes that it has specific personal jurisdiction over Defendant and denies its motion to dismiss pursuant to Rule 12(b)(2).

## II.     Motion to Dismiss for Improper Venue under Rule 12(b)(3)

Defendant argues that venue is improper under 28 U.S.C. § 1391. However, "once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds." *Motley Rice, LLC v. Baldwin & Baldwin, LLP*, 518 F. Supp. 2d 688, 697 (D.S.C.

11

2007); *see Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) (observing that "even on the question of venue, § 1391 has no application . . . [in] a removed action [because the] venue of removed actions is governed by [28 U.S.C.] § 1441(a)"); *see also Quick v. Coale, Cooley, Lietz, McInerny & Broadus, P.C.*, 212 F.R.D. 299, 301 (M.D.N.C. 2002) ("[T]he fact that the federal court to which the action is removed might not have been an appropriate venue if the action had been brought there initially is irrelevant."); *Straub v. Kean*, 207 F. Supp. 420, 422 (D.S.C. 1962) ("The venue of removed actions is governed by 28 U.S.C. § 1441(a), providing for removal to the district court of the United States for the district and division embracing the place where such action is pending.").

Because this case has been removed from state court to the United States District Court for the District of South Carolina, it is governed exclusively by 28 U.S.C. § 1441(a), which provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  Plaintiff brought this action in the Florence County Court of Common Pleas, and Defendant removed the action to this Court, which is the district court "for the district and division embracing the place where such action [was] pending." *Id.*  As venue is proper, the Court denies Defendant's Motion to Dismiss for improper venue.  *See Selective Ins. Co. of S.C. v. Schremmer*, 465 F. Supp. 2d 524, 525-26 (D.S.C. 2006).

### III.    Defendant's Request for Dismissal or Stay Pursuant to the *Colorado River* Doctrine

Defendant requests that this Court abstain from exercising jurisdiction over this matter pursuant to the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  The *Colorado River* doctrine "allows a district court to abstain where parallel litigation exists in federal and state court and exceptional circumstances warrant abstention."  *Gannett Co., Inc. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 740 (4th Cir. 2002).  According to Defendant, the Texas Suit and the South Carolina Suit are parallel proceedings, and exceptional circumstances present in this case warrant abstention.

It is well established that the "dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other."  *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005); *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992) ("Despite what may appear to result in a duplication of judicial resources, the rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.") (alterations and quotation marks omitted).  Moreover, because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colo. River*, 424 U.S. at 817, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *id.* at 813.

"For a federal court to abstain under the *Colorado River* doctrine, two conditions must be satisfied."  *Gannett Co.*, 286 F.3d at 741.  First, "[a]s a threshold requirement, there must be parallel proceedings in state and federal court.  Second, 'exceptional circumstances' warranting abstention must exist."  *Id.* (citation omitted).  The court balances several factors to determine

13

whether a particular case presents such exceptional circumstances: "(1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights." *Id.* Importantly, the court "must balance the weight of each [factor] in accordance with the facts of a given case 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *McLaughlin*, 955 F.2d at 935 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). The district court has no duty to examine these factors, however, if it determines that the suits are not parallel. *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 233 (4th Cir. 2000).

Upon review of the complaints in the Texas Suit and the South Carolina Suit, the Court concludes that the two suits are not parallel. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). Defendant argues that the suits are parallel because they both relate directly to the purchase orders, the transactions between the parties, and the FDA recall of the wasabi aioli. However, although the two suits involve substantially the same parties and have "certain facts and arguments in common, the legal issues are not substantially the same." *Al-Abood*, 217 F.3d at 233. The Texas Suit alleges claims for breach of the promissory note and guaranty, whereas the South Carolina Suit does not involve these contracts. Moreover, while both suits allege claims for breach of contract arising from the business relationship,[2] the South Carolina Suit also alleges tort claims for negligence as

---

[2] The Texas Suit alleges breach of contract arising from unpaid accounts receivable, while the South Carolina Suit alleges breach of contract related to the use of the wrong ingredient in the wasabi aioli and the failure to timely acquire new packaging.

well as a claim for violation of the South Carolina Unfair Trade Practices Act.  Finally, while both suits seek monetary compensation, the Texas Suit also seeks equitable relief, including a declaratory judgment regarding the true costs incurred by Plaintiff in connection with the FDA recall and an injunction ordering Plaintiff to provide all information related to the recall so that Defendant can file the proper forms with the FDA.  "A difference in remedies is a factor counseling denial of a motion to abstain."  *New Beckley*, 946 F.2d at 1074.  Based on the foregoing, the Court concludes that the parties are not litigating substantially the same issues in the Texas and South Carolina actions, despite the presence of similar facts and contract claims. Accordingly, the Court finds that this action is not parallel with the Texas Suit within the meaning of *Colorado River*.

Although the Court is not required to examine the various abstention factors, *see Al-Abood*, 217 F.3d at 233, the Court concludes that Defendant has not carried its burden of showing exceptional circumstances.  There is no property at issue in this action.  Moreover, as explained below, Defendant has not demonstrated that the federal forum is so inconvenient as to support a transfer of venue, let alone abstention.  Furthermore, Defendant chose to remove this action to federal court, thus electing to litigate in the federal forum.  Accordingly, the Court concludes that this factor counsels against abstention.  With respect to the desirability of avoiding piecemeal litigation, Defendant has not demonstrated that this Court's "retention of jurisdiction exacerbates the inefficiencies of this litigation beyond those inefficiencies inherent in duplicative proceedings."  *Gannett*, 286 F.3d at 745; *see id.* at 744 (explaining that "for abstention to be appropriate, retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly illsuited for resolution in duplicate forums").  Moreover, although the Texas Suit

15

was filed first, "priority should not be measured exclusively be which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21.  In this case, the South Carolina Suit was served upon Defendant five days before the Texas Suit was served upon Plaintiff; thus, these actions appear to be proceeding at similar paces.  Finally, although federal law is not implicated in this action, "federal courts regularly grapple with questions of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." *Gannett*, 286 F.3d at 747 (holding that the district court abused its discretion by concluding that the presence of state law and the fact that the dispute could be adequately litigated in state court militated in favor of abstention). Accordingly, the Court finds that "no factor or combination of factors in this case gives rise to 'exceptional circumstances'" to justify the surrender of jurisdiction.  *Id.* at 748.  Because the Court concludes that abstention under the *Colorado River* doctrine is inappropriate, the Court denies Plaintiff's motion to dismiss.

## IV.     Defendant's Request to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

Finally, Defendant requests that the Court transfer this case, pursuant to 28 U.S.C. § 1404(a), to the U.S. District Court for the Northern District of Texas.[3]  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  This provision "is intended to

---

[3]     Defendant also argues that the Court should dismiss this action based on the doctrine of *forum non conveniens*.  However, the "common-law doctrine of *forum non conveniens* has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (internal quotation marks and citation omitted).  "For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Id.* (citing 28 U.S.C. § 1404(a)).  Accordingly, the Court will evaluate Defendant's argument under the framework of § 1404(a).

place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "To prevail on a motion to change venue pursuant to § 1404, the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 925 F. Supp. 411, 413 (D.S.C. 1996) (internal quotation marks omitted). In determining whether to exercise that discretion, "the court must consider whether venue is proper in the proposed transferee district. If the proposed venue is proper, the court then considers whether transfer is in the interest of justice and will serve the convenience of the parties and witnesses." *United States v. $78,850.00 in U.S. Currency*, 446 F. Supp. 2d 428, 431 (D.S.C. 2006) (citation omitted). As a general rule, the plaintiff's choice of forum is given substantial weight and "should rarely be disturbed unless the balance is strongly in favor of a defendant." *Miliken & Co. v. F.T.C.*, 565 F. Supp. 511, 517 (D.S.C. 1983) (citing *Morehead v. Barksdale*, 263 F.2d 117 (4th Cir. 1959)).

It is undisputed that venue is proper in the Northern District of Texas. Thus, transfer of venue will be proper only if Defendant demonstrates that the proposed transfer is in the interest of justice and will serve the convenience of the parties and witnesses. Defendant argues that Texas has more connection to and interest in this litigation because all of the actions giving rise to this lawsuit occurred in Texas, the parties agreed that the promissory note and guaranty would be governed by Texas law, the business agreements were negotiated in Texas, and the majority of documents and witnesses are located in Texas. Finally, Defendant contends that Texas would not be an inconvenient forum for Plaintiff because Plaintiff has registered to do business in

Texas and routinely interacted with Defendant in Texas throughout the course of the business relationship.  Plaintiff responds that Defendant has done substantial business in South Carolina and that transferring the case to Texas would simply flip any inconvenience to Plaintiff.  Plaintiff also anticipates that the majority of nonparty witnesses, such as representatives of companies that ceased doing business with Plaintiff, will not be from Texas.

The Court is not persuaded by Defendant's arguments.  First, Defendant has failed to demonstrate that transfer of venue will serve the convenience of witnesses.  As other courts in this District have explained, in order to meet its burden, Defendant must

> submit, through affidavits from the witnesses and/or parties involved, the following information: (1) the name of the witness or party; (2) the subject matter to which he or she will testify; [and] (3) a statement from the affiant as to why or to what extent he or she will be inconvenienced by moving the case to another district or allowing the case to remain in the district where it was brought.

*Avant v. Travelers Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C. 1987); *see Figgie Int'l, Inc.*, 925 F. Supp. at 414 ("Affidavits from the concerned parties and/or witnesses [are] important in determining whether the moving party has met its burden of proof.").  In support of its motion, Defendant has submitted the Declaration of Aaron L. Edelen, Defendant's vice president of sales.  In this declaration, Mr. Edelen states: "All individuals associated with the business relationship between [Plaintiff] and [Defendant], save for the relevant employees of [Plaintiff], are residents of Texas."  Edelen Dec. ¶ 21, ECF 4.  However, he does not state that these individuals would be witnesses, nor does he describe the anticipated testimony of witnesses.  "This [C]ourt, without such information, cannot accept the naked assertion by movant's counsel

that the convenience of the parties and witnesses, and the interest of justice, warrant a transfer."[4] *Avant*, 668 F. Supp. at 510.

In addition, while the Court takes into consideration the fact that documents that will be necessary in resolving this case may be located in Texas, the location of documents has become a less significant factor as technological advances make the copying, storage, and transfer of documents easier. Although Edelen's declaration states that the "vast majority of documents and evidence related to the products manufactured by [Defendant] for [Plaintiff] are located in Texas," Edelen Dec. ¶ 22, he fails to identify the type or scope of that evidence. Additionally, Plaintiff's documents and evidence related to lost business are located in South Carolina. Therefore, the Court finds that Defendant has not met its burden of showing "by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *See Figgie Int'l, Inc.*, 925 F. Supp. at 413. Accordingly, Defendant's motion to transfer venue is denied.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's motion to dismiss or, in the alternative, to stay or transfer, is **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**March 14, 2014**
**Charleston, SC**

---

[4]     The Court notes that the affidavit submitted by Plaintiff similarly includes no mention of witnesses. However, the burden is on the movant to demonstrate that transfer is appropriate.